UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

JOSEPH G. MILLER,

                 Debtor.

_____

PATRICK S. LAYNG,
UNITED STATES TRUSTEE,

                 Plaintiff,

v.

JOSEPH G. MILLER,

                 Defendant.

Case No. 12-32487

Chapter 7

Adversary No. 14-2006

_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
_____

The plaintiff brought an adversary proceeding to deny the debtor's discharge under 11 U.S.C. §§ 727(a)(3), Failure to Keep and Preserve Records; (a)(4), False Oath or Account; and (a)(5), Failure to Explain Loss of Assets to Meet Liabilities. After the defendant filed his answer, the plaintiff filed this motion for partial summary judgment as to two of the three counts, 11 U.S.C. §§ 727(a)(3) and (a)(5), on the grounds that there were no issues of material fact remaining, and judgment should be granted as a matter of law. The defendant opposed the motion and the parties filed briefs supporting their respective positions. This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

BACKGROUND

The debtor, Joseph G. Miller, filed a chapter 11 petition on August 22, 2012. His bankruptcy schedules showed secured debt of $15,820,162.53 and unsecured debt of $12,465,492.89. Mr. Miller was engaged in the business of buying, rehabbing, renting and selling real property. His business was conducted through a number of limited liability companies, some of which were solely owned and some of which were owned with others. Mr. Miller funded his business through bank loans, as well as contributions from individual lenders or investors.[1]

The US Trustee, the Official Committee of Unsecured Creditors, and a secured creditor sought records and accounting from the debtor and his accountant through Rule 2004 examinations. The US Trustee subsequently filed a motion for the appointment of a chapter 11 examiner, which this Court granted on March 7, 2013. On July 2, 2013, the US Trustee filed a motion to convert the case to chapter 7 for cause under 11 U.S.C. § 1112(b)(4). A hearing on the examiner's preliminary report was held on July 9, 2013, at which time the parties were given additional time to discuss certain contested matters within the report. On August 2, 2013, the debtor moved to voluntarily dismiss his case.

The examiner's expert witness report concluded that, due to the lack of documentation, the debtor failed to account for approximately $10,000,000.00 received from banks and individuals. The Court held combined hearings on the competing motions to convert and dismiss on November 14, 2013, and November 25, 2013, at which time the parties presented documents

---

[1] The plaintiff alleges the debtor solicited funds from individuals with the promise of a high return on their investment. The debtor asserts that he had no investors, but rather received documented loans from individual lenders.

2

and testimony. In reaching its conclusion that the interests of all creditors and the estate would be better served by conversion, rather than dismissal, the Court made the following findings:

> There are missing bank statements, there's huge amounts of money flying around that is unjustified, really, just the payment amounts alone with Mr. Honl [individual investor/lender]. I hate to pick on you, Mr. Honl. I think you've been a victim here. But it shows Mr. Honl getting $7,500 one year and $5,000 another year, and yet, Notes were paid off.
>
> Okay. Well, a Chapter 7 trustee is not going to have a lot of money available to do a lot of investigation. We've got partial investigation from the examiner, but he didn't have all the financial information, and he definitely didn't have the checks and where the money went. All we have is Mr. Miller's, I'm afraid, fanciful memory of a hundred thousand here and twenty thousand here, and that's a lot of investigation for a Chapter 7 trustee to do. But actually, where this belongs is probably with the U.S. Attorney's Office for criminal prosecution or criminal investigation division of the IRS. They're the ones with the resources because there's a lot of money flying around and no records, intentionally, as near as I can tell.
>
> There's no question that if this were a trial on denial of the discharge, failure to keep appropriate records, done and done. That's not going to do the unsecured creditors – who knows were all this money went, but it was sure going back and forth, and it was a definite Ponzi scheme, and that just opens the door for all sorts of problems for the unsecured creditors.
>
> The whole idea of bankruptcy is that they will be treated equally and sometimes that means, kicking and screaming, they've got to give it all back, put it in one pot, and then divide it upon the priority system of the bankruptcy court.
>
> In essence, it's sort of a policy decision sometimes that you cannot use the bankruptcy code to get a year's worth of automatic stay and make everybody jump through all these hoops, and not disclose what you're supposed to, and not keep records that you're supposed to, and use the bankruptcy system for what I think is an improper purpose. And maybe that's why it really needs to be converted.
>
> I listened to Mr. Honl's [previous] testimony at lunch today, and one of the statements he made was that statements can be altered. That's what he said. Didn't get a financial statement because statements can be altered. Isn't that a telling comment? But he has confidence in Mr. Miller, and maybe Mr. Miller will land on his feet, but the origin of the term "con man" is confidence. And as near as I can tell, that's what I've seen here.
>
> Mr. Miller didn't keep canceled checks, claims he didn't get canceled checks.

>Maybe not. An accountant probably would, and an accountant certainly would have kept the deposit slips and would have been able to reconcile that – all of the money coming in. But money going out and flip-flopping from LLC to different LLCs out to the unsecured investors who – $175,000 all at once, there's something very, very smelly here. This definitely does not pass the smell test.
>
>So I don't know whether a Chapter 7 trustee can do the kind of investigation necessary to find where this money went or if it's all been consumed. I suspect that as well. . . .

(Audio transcription of November 25, 2013, hearing, p. 10, l. 8 - p. 12, l. 25). After the case converted to chapter 7, the trustee adjourned the section 341 meeting of creditors multiple times for documents.

ARGUMENT

The US Trustee argues that based upon the previous hearings in this matter and the record as a whole, summary judgment is clearly appropriate as to 11 U.S.C. § 727(a)(3) due to the failure of the debtor to keep or preserve records. *See In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999); *Matter of Juzwiak*, 89 F.3d 424, 429 (7th Cir. 1996). The facts already before the court establish by a preponderance of the evidence that the debtor has repeatedly failed to provide the requested records regarding his numerous financial transactions with investors and financial institutions, effectively concealing where the money went. The failure to produce records also supports denial of discharge under 11 U.S.C. § 727(a)(5). *See Matter of D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996); *In re Broholm*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). The debtor received millions of dollars from numerous sources in the years leading up to the petition date, yet those assets provide little or no equity. The debtor has failed to satisfactorily explain the loss. The court may employ the use of judicial notice in ruling upon a motion for summary judgment. *In re Daniel*, 227 B.R. 675, 684 (Bankr. N.D. Ind. 1998). The court's previous findings

regarding the debtor's lack of records is the law of the case.

The debtor argues that he provided thousands of documents to the US Trustee and the court-appointed examiner, including an accounting of the funds he received from non-commercial lenders for the four year period preceding the petition. The plaintiff has failed to provide affidavits in support of its motion for summary judgment and has not met its burden of proof. At the previous hearing on the motions to convert or dismiss, the burden was on the debtor to prove that he was entitled to a dismissal rather than a conversion. Currently before the court is a motion for summary judgment, and since any disputed facts are to be taken in a light most favorable to the non-moving party, the court's prior statements and the opinion of the examiner are not sufficient to meet the movant's burden of proof. The debtor has produced evidence of the monies he has received and provided an explanation of what those monies were used for: the purchase and rehabilitation of residential properties and their maintenance, upkeep and expenses, as well as to pay back unsecured loans. The debtor's loss of assets is due to the fact that he purchased most of his assets before the real estate collapse of 2008, and the expenses associated with the properties have outpaced the rental income.

## DISCUSSION

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which

5

Case 14-02006-gmh    Doc 12    Filed 06/05/14    Page 5 of 9

requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

While a court may take judicial notice at the summary judgment stage, Fed. R. Evid. 201, "in order that a matter may properly be a subject of judicial notice, it must be 'known', that is, well established and authoritatively settled, and uncertainty or difference of belief in respect to the matter in question will preclude judicial notice thereof." 60 Am. Jur. 3d *Proof of Facts* 75 (2001). This might include the date of the last full moon or the fact that Prospect Avenue is a one way street, but it does not include an offhand comment or judgment call about whether the debtor can be denied a discharge for incomplete records. Because the evidence supporting the Court's previous decision to convert this case to chapter 7 does not meet the criteria for judicially noticed facts, that doctrine will not be applied in this instance.

A more appropriate – but ultimately inapplicable – doctrine is the "law of the case." Generally, "[u]nder the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996). The law of the case doctrine is a rule of practice: once an issue is litigated and decided that should be the end of the matter. *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005). However, the "law of the case" is not an inflexible rule:

> In the absence of statute the phrase, "law of the case," as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.

*Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739 (1912).

The following transpired at the hearing on the debtor's motion to dismiss and the US

6

Trustee's motion to convert to chapter 7:

> The Court granted the US Trustee's motion to convert to chapter 7. Because the parties agreed that sufficient cause existed to support either conversion or dismissal, the Court had to determine which disposition was "in the best interests of the creditors and the estate." 11 U.S.C. § 1112(b). The debtor and the Creditors' Committee favored dismissal. Along with the US Trustee, both Layton State Bank and CRE Venture 11-00001, LLC, favored conversion to chapter 7.
>
> In the event of dismissal, the debtor planned to pay creditors outside of bankruptcy through a trust established for the benefit of unsecured creditors who chose to participate. The debtor would provide 50% of net cash flow to the trust, commencing in approximately 6 months from the date of the dismissal. Mr. Miller would provide a personal guaranty to the trust beneficiaries and would not file a case under Title 11 of the U.S. Code for a period of at least five years. In exchange, the beneficiaries would not be allowed to commence any collection actions against Mr. Miller for five years. Mr. Miller currently lacks income or assets with which to fund the trust and his plans to do so are fanciful, at best. The plan to establish a trust has not been noticed to all creditors and, even if due process were provided, the terms of the "structured dismissal" may be unenforceable, which could lead to subsequent litigation. Additionally, the res of the trust could be at risk for garnishment by other creditors who choose not to be beneficiaries.
>
> The Court concluded that the interests of all creditors and the estate would not be better served by dismissal rather than conversion. A chapter 7 trustee might be able to recover and administer assets, including potential meritorious preference recoveries and fraudulent transfers, for the benefit of creditors. Furthermore, the confusing, incomplete, and conflicting state of the debtor's financial records and his misleading testimony support conversion to chapter 7. *See In re Domiano*, 442 B.R. 97 (Bankr. M.D. Pa. 2010) (conversion to chapter 7 warranted when review of monthly operating reports (MORs) filed during case raised serious concerns about whether debtors had met their fiduciary responsibilities, as it appeared that MORs had been completed in cursory, if not casual, fashion, with significant portions left blank, leaving creditors to guess as to much of debtors' operations and financial results, checking account printouts attached to MORs encompassed multiple businesses and did not indicate sources of deposits). Mr. Miller did not turn over all financial records, and what he did submit precluded tracing receipts and expenditures. Some distributions might have been improper. For example, Mr. Honl acknowledged receiving money from the debtor that had been obtained from secured lenders, and some of his distributions might have come from other investors. Mr. Miller's testimony was not credible with respect to receipts and disbursements, and it sometimes conflicted with documents he had submitted. His bank statements did not have corresponding registers or accounting ledgers. Further investigation by an independent trustee is necessary to protect the rights of all creditors because the evidence

7

Case 14-02006-gmh    Doc 12    Filed 06/05/14    Page 7 of 9

does not support the feasibility of Mr. Miller's plan to take care of creditors, nor can he be trusted to act in their interest.

(Court Minutes dated November 25, 2013). The "law of the case" established by the Court's ruling was that conversion to chapter 7 was in the best interests of the creditors and the estate, not that the debtor should be denied a discharge. Consequently, there was no law of the case regarding the elements of sections 727(a)(3) or (a)(5).

The court's previous discussion on the record regarding a denial of discharge was "dictum." As noted by the Seventh Circuit:

> What is at stake in distinguishing holding from dictum is that a dictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject. So instead of asking what the word "dictum" means we can ask what reasons there are against a courts giving weight to a passage found in a previous opinion. There are many. One is that the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome. A closely related reason is that the passage was not an integral part of the earlier opinion – it can be sloughed off without damaging the analytical structure of the opinion, and so it was a redundant part of that opinion and, again, may not have been fully considered. Still another reason is that the passage was not grounded in the facts of the case and the judges may therefore have lacked an adequate experiential basis for it; another, that the issue addressed in the passage was not presented as an issue, hence was not refined by the fires of adversary presentation. All these are reasons for thinking that a particular passage was not a fully measured judicial pronouncement, that it was not likely to be relied on by readers, and indeed that it may not have been part of the decision that resolved the case or controversy[.]

*United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988). This Court's comments regarding the debtor's denial of discharge "were unnecessary to the outcome of the earlier" ruling on dismissal or conversion and must be treated as such. It was more of an observation than a finding and definitely not a holding. The standard applicable in the section 727 actions relating to missing records and unexplained losses "was not presented as an issue" and was "not refined by the fires of adversary presentation." *Id*. The focus in a section 727 action is on the debtor's

8

conduct and intent, whereas the focus in the prior motions was on the effect of the proceeding on creditors. Therefore, because the debtor's right to obtain a discharge has not been previously litigated or decided, material facts remain in dispute, precluding the entry of summary judgment. A separate order consistent with this decision will be entered and further proceedings will be scheduled.

June 5, 2014

                                                      Margaret Dee McGarity
                                                     United States Bankruptcy Judge